# IN THE COURT OF APPEALS OF IOWA

No. 20-1640
Filed February 17, 2021

**IN THE INTEREST OF C.B.,**
**Minor Child,**

**A.B., Mother,**
 Appellant.
_____

 Appeal from the Iowa District Court for Linn County, Cynthia S. Finley, District Associate Judge.


 A mother appeals the termination of her parental rights to her minor child.
**AFFIRMED.**


 Mark D. Fisher, Cedar Rapids, for appellant mother.

 Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

 Julie F. Trachta of Linn County Advocate, Inc., Cedar Rapids, attorney and guardian ad litem for minor child.


 Considered by Bower, C.J., and Doyle and Mullins, JJ.

**MULLINS, Judge.**

The mother and child came to the attention of the Iowa Department of Human Services (DHS) shortly after the child's birth in May 2019. At the time, the mother's living arrangement was not one that she could return to with the child. Hospital staff noted concerns for the mother's ability to care for a newborn while recovering from birth and beyond. Concerns eventually arose about domestic violence between the mother and her paramour. The State sought and obtained an order for temporary removal. The child was placed in foster care, where she remained throughout the proceedings. The child was adjudicated in need of assistance upon stipulation of the parties. Due to concerns for the mother's mental functioning, the court ordered her to obtain cognitive, psychological, and psychiatric evaluations in its June dispositional order. The mother's cognitive evaluation indicated she has a moderate cognitive impairment and "shows obvious impairment in abstract thought processes including memory, judgment, reasoning and planning ahead." The cognitive evaluation report also noted the mother would have difficulty managing daily tasks and she posed a risk of "[s]elf-centered behavior" and "the inability to consider the needs of others."

By October, DHS was open to allowing the mother semi-supervised visits in order to assess whether she could provide appropriate care for extended periods of time. The court ordered the level of supervision to be in the discretion of DHS and the guardian ad litem, and the mother progressed to semi-supervised visits in the community, which involved the mother having between thirty and sixty minutes with the child between safety checks. However, DHS continued to have concerns for the mother's ability to provide for her own needs independently, let alone a

child's needs, and the mother's lack of a meaningful support system. As a result, the mother never progressed beyond semi-supervised visits. The mother underwent IQ testing in December, which resulted in findings that her IQ, verbal comprehension, perceptual reasoning, working memory, and processing speed, are all "extremely low." By February 2020, DHS recommended instituting termination proceedings. In her report, the social worker opined "parenting a child full-time on her own appears to be outside of the limits of [the mother's] abilities."

The State filed its petition for termination of parental rights in March. The matter was set for trial in July and then reset as to the mother in August. In July, the court entered an order terminating the parental rights of any putative father of the child. Trial as to the mother was again reset for November. A few days before the first day of trial, the mother filed a motion for overnight visits. She contemporaneously filed a "request for services and motion to continue," in which she identified two potential fathers of the child and requested a continuance for the purpose of conducting paternity testing. The court ordered the motions be addressed at the time of trial.

At the outset of trial, the court denied the mother's motions for overnight visitation and continuance for paternity testing. The court reasoned semi-supervised visits were tailored to the needs of the mother and child and jumping over unsupervised visits to overnights would be too extreme. On the motion to continue, the court noted the mother had offered up multiple men as the potential father, all of whom turned out to not be the father. The court viewed the mother's motion as another delay tactic and concluded any further delay would be contrary to the child's best interests and need for permanency. In its written ruling, the court

echoed its reasoning and added the parental rights of any putative father had already been terminated.

At the termination hearing, one of the service providers testified to her belief that the mother's intellectual deficiencies prevent her from meeting the child's basic needs. The DHS worker echoed this concern and added that the mother "will need significant help meeting her own needs and keeping herself safe," "that it may not be advisable for her to care for a young child," and, while the mother has improved some of her parenting abilities, she plateaued at a point at which she could still not independently care for the child. However, the service provider also testified the child is bonded to the mother and severing the parent child relationship would be harmful to the child. On the other hand, the provider agreed returning the child to the mother would also pose a risk of harm to the child. The child has been in the same foster home since removal, where she has become integrated with the family, and the placement is willing to serve as a permanency option for the child.

The juvenile court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(h) (2020). The court highlighted the mother's ongoing need for supervision, intervention, and support outside of time-controlled interactions and her lack of a support system, and concluded the child could not be placed in her care on a full-time basis at the time of trial or within the foreseeable future. The court acknowledged that mental deficiencies alone are not sufficient to terminate but the mother's cognitive functioning is a contributing factor to the mother's inability to provide proper care. The court determined termination to be in the child's best interests and declined to apply a permissive exception to termination.

The mother appeals. She (1) asserts the juvenile court abused its discretion in denying her motion to continue trial for the purpose of allowing paternity testing as to two putative fathers, (2) argues termination is contrary to the child's best interests, (3) claims the court erred in declining to apply an exception to termination relative to the harm to the child resulting from severance of the parent-child bond, and (4) requests a six-month extension to work toward reunification.

We review the denial of a motion to continue for an abuse of discretion, which occurs "when 'the decision is grounded on reasons that are clearly untenable or unreasonable,' such as 'when it is based on an erroneous application of the law.'" *In re A.H.*, 950 N.W.2d 27, 33 (Iowa Ct. App. 2020) (quoting *In re M.D.*, 921 N.W.2d 229, 232 (Iowa 2018)). Appellate review of orders terminating parental rights is de novo. *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019). Our primary consideration is the best interests of the child, *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006), the defining elements of which are the child's safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

As to the denial of her motion to continue, the mother claims the court should have continued trial for the purpose of providing paternity testing as to two potential fathers. She claims that "finding another biological parent would be a paramount benefit as it could provide for additional support" for the mother and facilitate maintenance of "a continuing relationship between" the mother and child. On our review, we find the denial of the motion to continue was not unreasonable, and we agree with the juvenile court's assessment of the motion as a delay tactic.

We turn to the child's best interests. In determining whether termination is in the best interests of a child, we "give primary consideration to the child's safety,

to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). As noted, the defining elements of a child's best interests are safety and need for a permanent home. *H.S.*, 805 N.W.2d at 748. We agree with the mother's assertions that she was compliant with services, obtained suitable housing, and progressed to semi-supervised visitations with the child. While we agree the mother has improved some of her parenting abilities, we also agree with DHS that the mother plateaued at a point at which she could still not independently care for the child on a full-time basis. The mother does not challenge the sufficiency of evidence supporting the ground for termination cited by the juvenile court, and "[i]t is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will . . . be able to provide a stable home for the child." *In re A.B.*, 815 N.W.2d 764, 777 (Iowa 2012) (quoting *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010)). And the child is integrated into her foster placement, which has provided a loving and safe home and is willing to provide permanency. *Cf.* Iowa Code § 232.116(2)(b). We conclude termination is in the child's best interests.

Next, the mother requests the application of the statutory exception to termination contained in Iowa Code section 232.116(3)(c). We first note the application of a statutory exception to termination is "permissive, not mandatory." *In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016) (quoting *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014)). Iowa Code section 232.116(3)(c) allows the juvenile court to forego termination when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of

the parent-child relationship." We certainly acknowledge the child is bonded to the mother, and we recognize that the child will suffer negative consequences as a result of termination. The question is "whether the child will be disadvantaged by termination, and whether the disadvantage overcomes [the mother's] inability to provide for [the child's] developing needs." *In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010). While we agree termination will pose disadvantages, we are unable to conclude severance of the parent-child bond will be detrimental to the child. Any disadvantage will be short-lived, given the child's young age and removal from the mother's care for all but a few days of her short life. We decline to apply the urged exception.

Subsumed within her best-interests and statutory-exception arguments, the mother passively requests an extension of time to work toward reunification. If, following a termination hearing, the court does not terminate parental rights but finds there is clear and convincing evidence that the child is a child in need of assistance, the court may enter an order in accordance with section 232.104(2)(b). Iowa Code § 232.117(5). Section 232.104(2)(b) affords the juvenile court the option to continue placement of a child for an additional six months if the court finds "the need for removal . . . will no longer exist at the end of the additional six-month period." Allowing an extension requires enumeration of "the specific factors, conditions, or expected behavioral changes" that will alleviate the need for removal. *Id.* § 232.104(2)(b). While we commend the mother for meaningfully participating in services, we are unable to conclude the need for removal will no longer exist after six months. The mother's cognitive deficiencies contribute to her inability to provide full-time adequate parenting. At the time of termination, the

child had been removed from the mother's care for roughly eighteen months. While the mother progressed to semi-supervised visits, our de novo review of the record discloses semi-supervised visits were as liberal as interactions could have been and the child could not safely be placed in the mother's care for longer periods of time. We are unable to conclude an additional six months would change that, so we decline to grant an extension.

We affirm the termination of the mother's parental rights.

**AFFIRMED.**